## Elisha Chamberlain and another v. Benjamin F. Dow and another.

Where two persons together make a bargain to buy goods of the value of more than fifty dollars, which is void because not in writing, the subsequent acceptance of the goods by one without the knowledge or assent of the other, will not amount to a ratification of the void bargain as to both.

Where such a bargain was made by two persons who had previously made a contract for a co-partnership between themselves, and before the goods were received the agreement for a co-partnership was rescinded; and it did not appear that the original bargain for the goods was made by these persons as partners, or that the sellers knew of their arrangement to become such, it was held that the vendors of the goods were not entitled to notice of the dissolution of the partnership. Persons having no knowledge of a partnership are not entitled to notice of its dissolution.

*Submitted on briefs April 27th. Decided June 6th.*

Error to Genesee Circuit.

The action was brought by Dow & Fowler against Chamberlain & Thomas to recover the price of a threshing machine. On the trial in the Court below, the plaintiffs gave in evidence that they, residing and doing business in

the State of New York, were partners in the manufacture and sale of threshing machines in the year 1858; that Daniel McKercher was then their agent, residing near the city of Flint, Michigan, for the sale of their threshing machines: that in June, 1858, said agent made a bargain verbally with said defendants, by which said McKercher, for plaintiffs, agreed to sell, and the said defendants to purchase, a threshing machine which McKercher agreed to send for to his said principals, the plaintiffs, and, on delivery thereof to defendants, they were to pay down fifty dollars, one hundred dollars in the following fall, and the balance, being $150, in one year therefrom, and in addition defendants to pay the cost of transporting said machine from New York to Michigan; and McKercher agreed to give defendants an order on the freight agent of the Detroit & Milwaukee R. W. Co., for said machine, and leave the same for said defendants with Jerome Eddy. No note or memorandum in writing was made of this bargain, and no payment made by way of earnest or otherwise. McKercher, ten or twelve days afterwards, drew an order, directed to the freight agent of the Detroit & Milwaukee Railway Co., at Holley, to whom a threshing machine had been sent by said plaintiffs, ordering the delivery of said machine to said Thomas & Chamberlain; which order was left with said Eddy to be delivered to defendants. It did not appear whether Eddy ever delivered the order to anybody, but the machine was afterwards in the possession of defendant Thomas. In July, 1859, nothing having been paid by defendants for said machine, and the same then being in the possession of said Thomas, McKercher, who was still agent of plaintiffs, entered into an arrangement with said Thomas and his brother, Henry Thomas, by which they gave their joint note for $100, and delivered it to said McKercher, and agreed to secure by chattel mortgage on said machine the balance claimed by plaintiffs to be due from defendants for the machine;

that said McKercher and the Thomases were to meet on a subsequent day, when the mortgage was to be given. The meeting soon thereafter took place, but McKercher insisting on a joint mortgage from said Thomases, and they insisting on giving separate mortgages, each on a half interest in said machine, they separated without any mortgage being given.

It further appeared that the $100 note was paid by the makers at or about the time of the maturity thereof. Also that McKercher had no directions from plaintiffs to make said arrangement with the Thomases, and plaintiffs had not been informed of it.

The defendants then gave evidence, showing that there was, in June 1858, a verbal understanding between said defendants that they would purchase a threshing machine of said plaintiffs, through said agent, and operate the same as partners; that before the arrival of said machine, Chamberlain, by agreement with defendant Thomas, paid Thomas six cords of wood to be released from his agreement to purchase and operate said machine with him, which wood was received by Thomas as a satisfactory arrangement; of this arrangement neither the plaintiffs nor their agent had notice; Chamberlain did not receive the order for the machine from said Eddy, nor did he ever see it, nor was he present when said machine was obtained, nor did he have anything to do with getting it from the said freight agent; nor did he ever have possession of said machine, or anything to do with it.

The defendants below requested the Judge to charge the jury, that the said bargain or understanding between the plaintiffs by their said agent, McKercher, and defendants, was void, because there was no note or memorandum thereof in writing, or payment of any sum, by way of earnest to bind the bargain or otherwise; and that if the jury find that the agreement between defendants to jointly purchase and operate such machine, had been rescinded before delivery of said machine on the order therefor to said defendant Thomas,

said verbal agreement did not bind Chamberlain, and such bargain for the sale of said machine was, as to him, void by the Statute of Frauds. But the Judge refused so to charge, and on the contrary charged the jury, that if the defendants purchased the machine in company, and became responsible therefor, that then the receipt of the machine by Thomas would take the case out of the Statute of Frauds, and the sale would thereby become binding on, and valid as to both of said defendants.

The defendant, Chamberlain, then requested the Judge to charge the jury, that if they should find from the testimony that the said plaintiffs, by their agent, sold the machine, in 1859, to the Thomases, such sale should be regarded as an abandonment and rescision of the bargain and understanding made in 1858, with the defendants. But the Judge refused so to charge, and instead thereof charged the jury, that if they should find that the plaintiffs sold the machine to the defendants according to the evidence on the part of the plaintiffs, a title to the machine vested in the defendants, and plaintiffs could not thereafter sell the said machine the second time, and divest the title of Chamberlain.

The jury rendered a verdict for plaintiffs, and defendants brought error.

*Sutherland & Miller*, for plaintiffs in error:

The verbal agreement for a sale to Thomas and Chamberlain was void, and there was no such subsequent de ivery and acceptance of the property as was necessary to make a valid sale to both Thomas and Chamberlain. The case shows no subsequent act done by Thomas which purported to be the act of Chamberlain, or of Thomas and Chamberlain. In the absence of proof it can not be claimed as matter of necessary legal inference that he obtained the order for the machine in the name of both.

The original purchase being void, Thomas had no authority afterwards to so receive the machine as to bind Chamberlain: — 3 *Mich.* 322; 1 *Comst.* 261, 273.

The defendants were not partners when the void contract was made, nor did they hold themselves out as such. While their contract of partnership was executory, either might refuse to go on, without incurring any liability to third persons:—10 *B. & C.* 126; 9 *Bing.* 113; 6 *Bing.* 779; 10 *M. & W.* 131; *Gray v. Gibson*, 6 *Mich.*

It is insisted that the subsequent arrangement by Mc-Kercher with the Thomases, was a rescinding of the first sale, even if confirmed.

*Oscar Adams*, for defendants in error:

It is not necessary to the validity of an agreement of co-partnership, that it or any note or memorandum of it, should be in writing. Therefore the verbal agreement of defendants to purchase and operate said machine as partners, rendered them such as to the plaintiffs; subject to all the rules governing partners in their dealings with third persons:—*Coll. on Part.* 2-4.

Having entered into that relation, and having made the agreement to purchase said machine as partners, each one was bound by the acts of the other, within the scope of their partnership business: and the delivery of the machine to Thomas was in law a delivery to both, as partners, and was sufficient to take the sale out of the Statute of Frauds, and render it binding upon both:—*Coll. on Part.* §§ 195, 384 *et seq.*

And they could not escape their liability as co-partners, by a dissolution of the co-partnership, before the delivery of the machine, without giving the plaintiffs express notice of such dissolution.

The subsequent arrangement of McKercher with the Thomases could not release Chamberlain, for the reason, among others, that McKercher had no authority to make it.

But laying aside all other considerations, we claim that the written order for the delivery of the machine to Thomas and Chamberlain — it having been made and

delivered to a party named by Thomas and Chamberlain themselves, by the express agreement of the parties at the time, and which clearly came into the defendants' hands, as without it they could not have obtained the machine from the freight agent — was a sufficient memorandum in writing to take the case out of the Statute of Frauds. And further, that the delivery of the order to Eddy, the person appointed by the parties to receive it, was constructively a sufficient delivery of the machine under the Statute of Frauds. See 3 *Mich.* 322.

MANNING J.:

As joint contractors merely, or as partners, if they were such, the agreement was not binding on Chamberlain and Thomas or either of them, as it was not in writing, and the price of the machine exceeded fifty dollars. The judge charged that if they purchased the machine in company, the receipt of it afterwards by Thomas took the case out of the Statute of Frauds. By company, we understand the charge of the Court as saying together, or as joint contractors, and not as partners. As joint purchasers neither had power to bind the other by subsequently accepting the machine.

As to partnership, it appears Chamberlain and Thomas on the trial gave evidence of an agreement between themselves to purchase a threshing machine of Dow & Fowler, and to operate the same as partners; and that before the machine was received by Thomas he had released Chamberlain from the agreement on the payment of six cords of wood by Chamberlain; and it is argued the charge is correct on the ground that Dow & Fowler had no notice of the dissolution of the partnership when the machine was received by Thomas. Admitting for the sake of argument all that is claimed for the agreement between Chamberlain and Thomas, that is, that they were partners — the evidence showing only an agreement to become

partners, and a termination of the agreement before Thomas received the machine—the charge of the Court makes no mention of, and is not based on a partnership transaction and a want of notice of the dissolution of the partnership. For the reason, we presume, if there was evidence of a partnership, that there was no evidence the contract was made with Chamberlain and Thomas as partners, by the agent of Dow & Fowler, or that he or they knew of its existence, and were therefore entitled to notice of its dissolution, to warn them against trusting to the acceptance of the machine by Thomas alone if they wished to hold Chamberlain. Persons having no knowledge of a partnership are not entitled to notice of its dissolution.

The judgment must be reversed, with costs, and a new trial ordered.

CHRISTIANCY and CAMPBELL JJ. concurred.

MARTIN CH. J.:

The defendants in error, through their agent, McKercher, agreed verbally with the plaintiffs in error to sell them a threshing machine for $300 and cost of transportation from New York to Michigan; and that they would give them an order on the freight agent of the Detroit and Milwaukee Railway Company for said machine, and leave the same with one Eddy. No note or memorandum in writing was made of this agreement, nor money paid by way of earnest; but the agent, ten or twelve days after, drew an order directed to the freight agent of said road, at Holley, to whom a machine had been sent by the defendants in error, ordering its delivery to the plaintiffs in error, and such order was left with Eddy to be delivered to the plaintiffs in error. It did not appear whether Eddy had ever delivered such order to any one, but the machine was afterwards in possession of Thomas, one of the plaintiffs in error.

I can not presume that Thomas obtained possession of the machine, except upon the production and delivery of such order; and if such be the fact, his possession was the possession of Chamberlain, as well as of himself. Unless the agreement had been repudiated before the order was given, each in receiving it and obtaining the property under it was the agent of the other. Having jointly agreed to purchase, both were bound by delivery to either, if such delivery were made under the contract; and such performance by the plaintiffs in error took the case out from the operation of the Statute of Frauds. The forwarding of the machine by the defendants in error for the purpose of executing the contract, coupled with the delivery of the order to Eddy, according to the agreement made between the parties, in my opinion, had this effect; but if not, the acceptance of the property by one of the joint purchasers under the order, without objection or repudiation of the contract by the other, most clearly had. In every joint purchase, each purchaser makes, of necessity, his co-purchaser his agent for the receipt of the property; in other words, the delivery to one under the contract is a delivery to all.

I hold, therefore, that the delivery of the order to Eddy for the use of Chamberlain and Thomas, according to the agreement with them, together with the sending forward of the machine, evidently for the purpose of executing the contract, and its acquisition by Thomas, under it—for I will not presume that he obtained it except upon such order—was such performance by Dow & Fowler as took the case out of the Statute of Frauds; that the acceptance by one of the plaintiffs in error was the acceptance by both, as joint purchasers; either obtaining the property under the order acted for both, and his act bound both. The delivery of the order to Eddy was a delivery to Chamberlain & Thomas, for they had stipulated for such delivery; and if Chamberlain desired to be freed from the contract to purchase, he should have given notice

of his intention to repudiate, or directed Eddy to refuse to accept the order. Being joint purchasers, for whose use and under whose agreement the order was deposited with Eddy, either making use of such order, and acquiring the property by virtue of it, acted for both. The credit was given to both jointly, and the order and performance of Dow & Fowler were to both.

The private agreement between Chamberlain & Thomas, by which Chamberlain was released from his agreement to operate the machine in co-partnership with Thomas, does not affect the right or remedy of Dow & Fowler. It was not an agreement with them, or made known to and approved by them. It did not operate to release Chamberlain from his liability as a purchaser; for it was not made with his vendors, nor did it relate to the purchase.

There is therefore no question of partnership rights or partnership liability involved in this case, as the partnership contemplated by Chamberlain & Thomas related only to the use of the machine after purchase; and the agreement by which Chamberlain was released from the contract to operate the machine with Thomas was personal to themselves. The consent of Dow & Fowler was necessary to release Chamberlain, and no agreement between him and Thomas would have that effect.

Chamberlain is therefore, as I think, liable in this action. The unexecuted agreement between the two Thomases and McKercher does not free him from such liability, for McKercher is not shown to have acted within the scope of his authority; but, on the contrary it appears that Dow & Fowler gave no authority to McKercher to make such agreement, and were ignorant of it. In the absence of evidence of the power and authority of the agent, we can not infer that he had authority to rescind contracts which had been executed by his principals, but remained executory on the part of their vendees.

I think the judgment should be affirmed.

*Judgment reversed.*