MOORE, MARSH & COMPANY *v.* DUCKETT.

1. Where a mercantile partnership, by a parol contract, purchased, from a seller with whom it had previously dealt, goods to the amount of more than fifty dollars, to be delivered at a future day, and before the delivery was made the partnership was dissolved and one of the partners retired therefrom, he would nevertheless be liable for the price of the goods delivered after the dissolution and received by the other partners, unless the seller had actual notice of the dissolution, at or before making the delivery, and the burden of proof is on the retiring partner to show that the seller had such notice.

2. The evidence being insufficient to show that the plaintiffs, when they delivered the goods, had notice of the dissolution of the partnership, the verdict in favor of the retiring partner was contrary to law, and a new trial should be had.
   June 26, 1893.

Before Judge WELLBORN.   Hall superior court.   January term, 1893.

Moore, Marsh & Co. sued Smith, Duckett & Dobbins, as partners, on two accounts, one for shoes and one for hats. As attached to the declaration, the account for shoes is dated February 19, 1891, and states, ".terms April 1st"; while the account for hats is headed, "April 10, 1891." The jury found in favor of the plaintiffs the amount sued for as against Smith and Dobbins, but found in favor of Duckett. As to him the plaintiffs moved for a new trial; the motion was overruled, and they excepted.

Duckett's pleas were, the general issue, the statute of frauds, and the following: The partnership of Smith, Duckett & Dobbins, on February 1, 1891, was dissolved, Duckett retiring, and the business was continued by Smith and Dobbins and Frank Smith under the firm name of Smith, Dobbins & Co., in which firm Duckett was in no way connected or interested as partner or otherwise. Plaintiffs had full knowledge of the dissolution and the persons who composed the firm of Smith, Dobbins & Co. If the goods were charged to Duckett, it was without his authority or consent; the firm of Smith, Duckett & Dobbins never received said goods; and if they were received by Smith, Dobbins & Co., Duckett is in no way liable, as he was in no way interested or connected with that firm; all of which was well known to plaintiffs when the goods were sold and delivered to the last mentioned firm.

The motion for new trial complains that the verdict is contrary to law and evidence, and that the court gave the following charge: "If you believe from the evidence that James F. Duckett was a member of the firm of Smith, Duckett & Dobbins at the time the goods were purchased from the plaintiffs, but was not a member of said firm at the time they were shipped, and plaintiffs delivered the goods without notice of the dissolution, the defendant Duckett would still be liable notwith-

standing the dissolution. But if Duckett was out of the firm at the time the goods were shipped, and Moore, Marsh & Co. had notice of that fact, or the circumstances were such as to charge them with notice, then he would not be liable. But such circumstances, to charge them with notice, must satisfy your minds that they did have notice." It is contended that this charge instructed the jury that Duckett could relieve himself from the purchase of goods while in the firm of Smith, Duckett & Dobbins, by retiring from the firm before the goods were delivered; and left on the minds of the jury the impression that the plaintiffs were bound to take notice of the dissolution, thereby shifting from the defendant to the plaintiffs the burden of showing notice.

The evidence for the plaintiffs was, in brief, as follows: The shoe bill was sold on January 14, the hat bill on January 20, 1891. Both sales were made to W. B. Smith (who always did the buying for the defendant firm) in the sample-room of a hotel at Gainesville. Duckett was at defendants' store when Smith left there to go with the salesmen to the hotel. The salesman of the hat bill testified that his best recollection was, that he spoke to Duckett about the sale of the hats, and that Duckett stated that Smith would do the buying as he had theretofore done. Nothing was said tending to put the salesmen on notice that Duckett was not a member of the firm. The contracts of sale made with Smith were, that the bills were to be dated April 1, 1891, and due four months from that date, and the goods were to be shipped February 15. The shoes were shipped February 19, the hats April 10. The plaintiffs had no notice of Duckett's withdrawal from the firm at the time the goods were sold, and would not have sold goods to the firm without him being a member of it. He was the moneyed man of the firm, and credit was extended on the bills sued upon on account of his name being in that

of defendants' firm. Plaintiffs had sold them goods. previously, had received letters and communications. from them, were acquainted with them in commercial transactions and connections, and believed all the time that he was such member. Plaintiffs did not, on or about the 13th of February, accept notes from the firm of Smith, Dobbins & Co., in settlement of these bills sold to Smith, Duckett & Dobbins; but on the 7th of May, 1891, plaintiffs did accept a note for $76 for an old balance due by the defendants, which note was paid and taken up. Plaintiffs have no note at this time. Their salesmen took one or more orders from the firm of Smith, Dobbins & Co. during 1891, which were refused by plaintiffs. There may have been letters received, but if so, they were lost or destroyed.

Evidence for the defendants: The firm of Smith, Duckett & Dobbins was dissolved on February 1, 1891, Duckett retiring and afterward having no connection with the business whatever. That firm was succeeded by the firm of Smith, Dobbins & Co., composed of W. B. Smith, E. S. Dobbins and Frank Smith. The last named purchased Duckett's interest. The new firm were to pay all the indebtedness of the old. These goods were not received while Duckett was in the firm, and he did not know they had been bought. He got no benefit from this bill of goods, and never heard of it until after Smith, Dobbins & Co. "busted." They made an assignment for the benefit of their creditors about June 22, 1891. W. B. Smith did the principal part of the business correspondence of both Smith, Duckett & Dobbins and Smith, Dobbins & Co. He did not remember how long after the dissolution before they had their letterheads changed, but it was only a few days. He never signed the firm name of Smith, Duckett & Dobbins to any letter or paper after they were succeeded by Smith, Dobbins & Co. The latter were continually in correspond-

ence with plaintiffs, who had every facility for ascertaining the fact that the firm had changed, if they read their letters and the signatures thereto. On February 13,1891, after the dissolution, notes were given, signed by Smith, Dobbins & Co., for certain bills of the plaintiffs against Smith, Duckett & Dobbins, which bills were dated October 22 and December 15, 1890. These notes were mailed to plaintiffs. Smith did not remember whether any of the notes were paid or not. He testified that "the accounts sued on were settled by note of Smith, Dobbins & Co. on February 13th, as marked on the invoices." In evidence was a note for $76.80 from Smith, Dobbins & Co. to the plaintiffs, dated May 7, 1891, and due June 15, 1891, on which note suit was brought on July 23, 1891, and judgment thereon in the plaintiffs' favor was rendered on August 7, 1891.

SAMUEL C. DUNLAP, for plaintiffs.

F. M. JOHNSON, G. K. LOOPER and G. H. PRIOR, contra.

SIMMONS, Justice.

1. The facts of this case appear in the reporter's statement. The dissolution of a partnership does not affect the liability of the partners upon binding contracts previously made by the firm. Each partner continues to be bound just as if the partnership had continued to exist. Otherwise, the members of any firm, simply by dissolving, could relieve themselves of all individual liability upon partnership debts or obligations. It is obvious that the law will not tolerate such a thing as this to be done. It follows that if, before dissolution, a partnership makes a binding contract for the purchase of goods, a delivery of the goods to one partner after dissolution is sufficient, and all the members are bound for the price. If, in the present case, the orders for the goods had been in writing, it is perfectly clear that the statute of frauds could have no application ; that all the members of the firm would, individually, have been

bound, and that the mere dissolution of the firm could not have operated to release the retiring partner. Moore, Marsh & Co., notwithstanding the dissolution, would have had the right to hold Duckett bound by the purchases made by his firm, even if they had been informed of the dissolution before delivering the goods. Down to this point, we are quite sure there can be no serious question that the law is as we have stated it to be.

The orders for the purchase of the goods, however, were not in writing, and the value being more than fifty dollars, it was insisted that the contracts were within the statute of frauds (Code, §1950, par. 7), not legally binding upon the firm itself until they became executed by the actual delivery and acceptance of the goods, and that as Duckett retired from the firm before the delivery took place, he was released, whether Moore, Marsh & Co. knew of the dissolution or not. The argument was, that as Duckett retired before the firm ever became legally bound, and as the firm ceased to exist after the dissolution and could never thereafter become bound as a firm of which he was a member, he was released. We do not think this argument is sound. We concede that, for the reason already stated, the contracts of purchase were not binding on the firm of Smith, Duckett & Dobbins, if they had chosen to repudiate these contracts, and had so informed Moore, Marsh & Co. before the goods were shipped; but in the absence of such action by the firm, it certainly cannot be denied that Moore, Marsh & Co. had the right, on their part, to complete the contracts by delivering the goods. The right of Moore, Marsh & Co. existed as to a firm of which Duckett was still a member; and they had the further right, in the absence of knowledge or notice to the contrary, to regard the firm as a continuing concern, and deal with it accordingly. They had previously dealt with this firm, composed of these very persons, and the

evidence shows that credit was extended to the firm upon the faith of Duckett's being a member. We see no reason, either in law or morals, why they could not safely assume that Duckett would continue to be a member. In order to prevent the shipment of the goods, and thus become relieved from any obligation to pay for them, it was necessary for the firm to notify Moore, Marsh & Co. not to ship them, and we do not think Duckett could be relieved unless he did this, or its equivalent. He knew, or ought to have known, that if he remained silent, Moore, Marsh & Co. would have the right to send the goods to the firm, still regarding him as a member of it; and it was incumbent on him to inform them that he had retired from the firm, and, consequently, would no longer be liable upon its contracts, and thus leave them free, after receiving this information, to ship, or decline to ship, as they might see fit. It does not seem lawful or just that he could escape liability without doing at least as much as the firm would have to do to accomplish this end, for as to Moore, Marsh & Co., he was still a member of the firm until they were informed of the dissolution ; and it follows, necessarily, that the burden of proof was upon him to show they had notice of the dissolution at or before the time they delivered the goods.

The case of Chamberlain et al. v. Dow et al., 10 Mich. 319, is somewhat like the present; and though, at first glance, apparently in conflict with the decision now made, really sustains it. A majority of the court in that case held that a parol bargain for the purchase of a machine worth more than fifty dollars, made by two persons, not as partners but as joint purchasers, was not taken out of the statute of frauds by delivering the machine to one of the purchasers without the knowledge or consent of the other, and that the latter was not bound. Chief Justice Martin dissented, and in a strong

opinion held that, under these circumstances, he would be bound. The evidence showed that the joint pur-chasers had not formed a partnership, but had made an agreement to do so, expecting to use the machine in the partnership business, and that there had been a termi-nation of this agreement before the delivery of the ma-chine. Manning, J., who delivered the opinion of the court, does not deny, but rather seems to concede, that if the purchasers had actually been partners when the machine was bargained for, the ruling would have been different.

2. We have carefully examined the evidence in the case before us. In no fair view of it can it be said that Moore, Marsh & Co., when they delivered the goods, had any notice or knowledge of the dissolution of the partnership; and we therefore hold that the verdict in favor of Duckett, the retiring partner, was contrary to law, and order a new trial.          *Judgment reversed.*