Levi Nutting, Appellant, against Joseph McCutcheon, Respondent.

APPEAL FROM THE DISTRICT COURT OF RICE COUNTY.

Note for $1,000, and interest at two and one-half per cent. per month, secured by mortgage. When the note became due the maker obtained the privilege of retaining the money longer, upon condition that he would pay interest thereon quarterly at the current rates. No contract for forbearance for any specific time was entered into, nor did the maker, at the beginning of the several extensions that were granted, specifically agree to pay any particular rate of interest, and no writings were executed in relation to the same, but at the end of each quarter the parties would meet and agree upon the value of money for the past quarter, and the maker would pay and the payee receive such amount in satisfaction of the interest accrued, and endorse the same upon the note as payment of interest up to that date, with the consent of the maker. *Held*, that the absence of a definite contract for forbearance on the one side and payment on the other, at the beginning of each quarter, did not influence the validity of the payments, as the parties obviated any such difficulty by stipulating the precise terms at the end of the time, and immediately executing them as settled. When a contract lacking the essential feature of mutuality at its inception, is subsequently, by the act of the parties, corrected in this particular, and executed, the question of mutuality between the parties is put to rest. *Held* further, that although the Statute requires that the contract for the payment of such interest shall be in writing, yet where it is made without writing and carried out and executed by the parties, money paid thereunder cannot be recovered back. The rule that where contracts are made in violation of statutory provisions, or in contravention of public policy, they are void, and money paid thereunder may be recovered back, is confined in its application to such contracts as involve by their subject matter some substantial violation of the spirit of the law or policy, and not such as stipulate some matter recognized and permitted by law or policy, but in a manner other than the one prescribed

The existence of a mortgage containing a power of sale, by which the mortgagor's land could have been sold by foreclosure under the Statute, if he refused to pay an increased rate of interest, was not in itself such a power in the hands of the mortgagor, as in contemplation of law amounted to duress or compulsion.

Points and Authorities of Appellant.

*First.*—Money obtained by oppression and by taking advantage of the distress of others, in violation of laws made for their protection, may be recovered back in an action for money had and received, and *a fortiori* a party is entitled to relief in equity from such unconscionable payments or

contracts. The maxim "*Potior est conditio defendentis*" has no application. In cases of this character the parties are not "*in pari delicto*," and the injured party shall recover. *Willard's Eq. Jur.*, 224; 1 *Story's Eq. Jur.*, sec. 302; 1 *Story on Con.*, sec. 491, note; *Willie vs. Green*, 2 *N. H.* 333; *White vs. Franklin Bank*, 22 *Pick.* 86; *Chitty on Con.* 549; *Tracy vs. Talmage*, 4 *Kernan*, 162.

*a.* It is a principle of the common law that the taking of a greater rate of interest than is allowed by law renders the contract void, and that money so taken may be recovered in an action for money had and received. *Wheaton vs. Hibbard*, 20 *Johns.* 290; 1 *Bosanquet & Puller*, notes, 262, *k*; 2 *Black's Com.*, 455–462; 4 *Id.*, 156; 1 *Story on Con.*, sec. 590, *et seq*; *Inhabitants of Worcester vs. Eaton*, 11 *Mass.* 376; *Crosby vs. Bennett*, 7 *Met.* 17; *Willie vs. Green*, 2 *N. H*, 333; *Bank of the United States vs. Owens*, 2 *Pet.* 527; *Going vs. Emory*, 16 *Pick.* 115; *Sackett vs. Sackett*, 8 *Pick.*36; 1 *Kent's Com.* 7t h Ed. 473 marg. p.; *Cons. of Wis.*, see. 14; *Comp. Stat.*, sec. 12, p. 38; *Ib. art.* 2, *p.* 16.

*b.* The rule is applicable to all cases where payments are made upon contracts which are expressly or by implication in contravention of any principle of common or statute laws. *Chitty on Con.* 570–572, 598; 2 *Greenf. Ev.*, sec. 111; *Wheeler vs. Russell*, 17 *Mass.* 280.

*c.* *Ch.* 30, *p.* 376, *Comp. Stat.* restricts the legal rate of interest in this State to seven per cent. *except when taken pursuant to a written contract.*

In the language of the Statute, any rate of interest agreed upon by the parties, *specifying the same in writing*, shall be legal and valid.

Where no rate is so stipulated for, seven per cent. shall be the legal rate.

Under the rule, "*Expresso unius est exclusio alterius*," this language is equivalent to an express declaration that no rate exceeding seven per cent., *not specified in writing*, shall be legal and valid. See *Robbins vs. Holman*, 11 *Cush.* 26.

Certainly this interpretation must be in accordance with the general policy and interest of the Statute, any other would stultify the Legislature and render the Statute a nullity.

Contracts in contravention of the general policy of statutes are equally illegal, as though prohibited by express declaration. *Downs vs. Lewis*, 11 *Cush.* 76; *Wheeler vs. Russell*, 17 *Mass.* 257; *Steiner vs. Wainwright*, 6 *Bingham*, *N. C.* 174; *Chitty on Con.* 598.

Like Statutes defining offences which existed at common law, the Statute merely fixes the legal rate and leaves the results of its violation, namely, contracts not brought within the terms of the exception, to be determined by the common law.

*d.* The common law tolerated no interest, and whatever we may think of the wisdom of such a prohibition, that law remains unchanged, save as modified by Statute. Our interest laws are therefore in derogation of the common law, and must receive a strict construction. 1 *Kent's Com.*, 7th *Ed.* 513–516, note *g.*

All contracts not brought clearly within these provisions, must be dealt with upon common law principles.

In the language of a member of this Court, "Considerations of public policy, and indeed of common prudence, require that this rule should be applied with the utmost strictness to the Statutes under consideration. If therefore the Statute permits parties to contract for exorbitant rates of interest, the Court should see to it that the privilege be confined within the strict letter of the law."

In this case the rate paid was not specified in writing, but even if it had been the Statute does not interfere with the rights of a Court in the exercise of its Chancery powers to relieve a party from the hardships of any contract which it would be inequitable to enforce. *Mason & Craig, et al, vs. Callender, Flint & Co.*, 2 *Min.*, 380; *Griffith vs. Glute*, 4 *Halst.* 264.

*Second.*—The payments in the case at bar were not voluntary, but were made upon compulsion, the party having no day in court to protect the property held by Plaintiff under his mortgage from sale by *ex parte* proceedings under the power of sale therein contained, and also to procure the release of a portion thereof. *Close vs. Phillips*, 7 *Manning & Granger*, 586; *Chitty on Con.* 550, 551; *Casenove vs. Cotten*, 4 *Met.*

246;, *Preston vs. Boston*, 12 *Pick.* 7; *Boston and Sandwich Glass Co. vs. City of Boston*, 4 *Met.* 181; *Forbes vs. Appleton*, 5 *Cush.* 115; *Dana vs. Kimball*, 17 *Pick.* 545; 2 *Greenl. Ev.* sec. 121; *Richardson vs. Duncan*, 3 *N. H.* 508.

*a.* The law regards whatever is done to obtain money on usurious terms not as a voluntary act, but as the direct result of constraint and violence on the part of the usurer. *Schroeppel vs. Corning*, 5 *Denio*, 240.

The Defendant having paid the money on the note in suit, and yielded to its application to the reduction of interest as the preservation of his property compelled him to do, now embraces the first opportunity offered him to test the legality of Plaintiff's demand before a competent tribunal. See *Benson vs. Monroe*, 7 *Cush.* 131; *Bidwell vs. Whitney*, decided at July Term of this Court, 1860.

Points and authorities for Respondent:

I.—If the agreement for forbearance be in conformity with the spirit of the Statute—and we contend it was—the original stipulation for interest having terminated with the maturity of the note, the new rates of interest having been agreed upon by the parties, entered from time to time in the Bill Book, and paid voluntarily for periods then transpired, and endorsed in writing on the back of the note, and thus engrafted into the contract—then the transaction was not usurious, and the interest was justly and legally paid, and justly and legally retained. This proposition is self evident.

II.—But if—as the defence assumes—the agreement or understanding was invalid, because the new rates of interest and times of extension were not definitely agreed upon and *previously* stipulated in writing, so that the Plaintiff was not thereby prevented from sueing at any time, and on the other hand the Defendant was not prevented, of course, from paying his just debt and legal interest at any moment, at his own election, and thereby avoiding all extra interests—*then the transaction was not usurious.* Surely not. For it is an universal rule of law, that "when by the terms and legal effect of a contract, alleged to be usurious, the party can at any time discharge himself by paying the real amount due, principal

and legal interest, the transaction is not obnoxious to the Statute against usury; * * * and if such party, under such a contract, at his own election, waives his rights, and voluntarily pays the higher rate of interest, he shall be deemed to have paid voluntarily, and will not be allowed afterwards to recover the excess back. *Lindley's Roman Jurisprudence, p.* 153–161, *and English cases cited in the Appendix;* 13 *Ill. Rep.* 579, *Lawrence vs. Coles;* 3 *Coke,* 507, *Roberts vs. Tremayno;* 1 *Cowan R.* 112, *Floyer vs. Edwards;* 1 *Broderick & Bingham's R.* 447, *Wills vs. Girling;* 8 *Blackford's Rep.* 140, *Gambril vs. Doe;* 8 *Mass. Rep.* 259, *Cutter vs. Howe; Bacon's Abr. Title Usury, letter C;* 2 *Parsons on Con., p.* 393, *and notes and cases cited in the notes;* 1 *Green (Iowa) Rep.* 128, *Shuck vs. Wight.* Viewed in the facts in either aspect, therefore, the conclusions of law are the same, and the defence of usury falls to the ground.

III.—We should have then—the question of usury forever aside—the common and ordinary case of payments, just and equitable between the parties, voluntarily made, with a full knowledge of all the facts, whatever may have been their view of the law—accepted, applied and evidenced in writing on the back of the contract, and it is universally true that such payments, so made, cannot afterwards be disturbed, and the amount recovered back. And so the judgment below should be affirmed. See the *4th finding in Matters of Fact, fols.* 14, 15, *and 1st finding in Matters of Law, fol.* 16; 7 *Hill Rep.* 159–161, *Silliman vs. Wing;* 2 *Sanf. Rep.* 477, 482, *Fleetwood vs. the City of New York;* 2 *Denio Rep.,* on *p.* 39, 40, *Supervisors vs. Briggs;* 10 *Peters* (12 *Curtis*) on *p.* 49, 51, *Elliott vs. Swartwout;* 7 *Cushing's Rep.* 125, *Benson vs. Monroe;* 2 *Kernan* (12 *N. Y.*) *Rep.* 99, *Harmony vs. Bingham, see pp.* 116, 117; 1 *Story's Eq. Jur., sec.* 137, 138, *and notes on pp.* 161, 162; 12 *Peters' U. S. Rep.* 32, 55, 56, *Bank vs. Daniels;* 12 *Curtis' Rep.* 618.

IV.—This is a bill in Equity, and the Plaintiff is entitled to such measure of damages by way of relief as shall make him whole, reference being had to the just and lawfully available value of money at the several times in question. To permit this Defendant, after having prevented the Plaintiff from

letting his money to other parties in the market, at the usual rates of interest, under assurance of making him whole, to turn round now and repudiate his payments and reclaim the interest paid, would be to allow him to take advantage of his own wrong.

COLE & CASE, Counsel for Appellant.

H. C. LOWELL & Co., Counsel for Respondent.

*By the Court*—FLANDRAU, J.   This case presents rather a new feature under the interest law of the State.   The Defendant Nutting had given his note to the Plaintiff for the sum of one thousand dollars, with interest at the rate of two and one-half per cent. per month, and had secured the payment of the same by a mortgage upon real estate executed by himself and his wife.   When the note fell due the Defendant did not wish to pay it, but requested the privilege of retaining the money longer, which was granted by the Plaintiff upon the consideration that he should pay interest upon the same quarterly at the current rates.   The evidence does not disclose that any contract was entered into by which forbearance was granted for any specific time; nor does it appear that the Defendant, at the beginning of the several extensions that were granted, specifically agreed to pay any particular rate of interest, nor that any writings were executed about the same.   The parties would meet at the end of each quarter and agree upon the value of money in the market for the past quarter, and the Defendant would pay and the Plaintiff receive such amount in satisfaction for the interest accrued.   The same would be then endorsed upon the note as payment of interest up to the date of the endorsement, with the full consent of the Defendant.   The Court find, as matter of fact, and we think the evidence fully sustains the finding, that these several payments were made by the Defendant " voluntarily, and in conformity with the mutual agreement and understanding of the parties."   And also, that as matter of fact, there was no " duress or compulsion" used to obtain them.

We do not think that it can influence the validity of these

payments one way or the other, that there was no definite contract made for forbearance on the one side and payment on the other at the beginning of each quarter, because the parties obviated any such difficulty by stipulating the precise terms at the end of the time, and immediately executing them as settled. Such a question might have been raised, perhaps, if the contract had been left executory, and either party had attempted its enforcement, but when a contract, lacking the essential feature of mutuality at its inception, is subsequently, by the act of the parties, corrected in this particular and executed, all such questions necessarily are put to rest between the parties. I think, therefore, we must enter upon the examination of this case as if the payments had been made upon express verbal contracts of the terms and conditions that were adopted, at the times they were paid.

The counsel for the Plaintiff urges that as the Statute allowing the taking of interest beyond seven per cent. per annum, requires the contract for the same to be in writing; a verbal agreement for such greater rate is contrary to the Statute and void, and money paid under it may be recovered back. There is no doubt that where contracts are made in violation of statutory provisions, or in contravention of public policy, they are as a general rule void, and money paid under them may be recovered back, but this rule is confined in its application to such contracts as involve by their subject matter some substantial violation of the spirit of the law or policy, and not such as stipulate some matter recognized and permitted by law or policy, but in a manner other than the one prescribed. The Statute concerning interest allows the taking of any rate the parties may agree upon, provided they stipulate for the same in writing. It cannot be said that the taking of interest beyond seven per cent. per annum is contrary to the spirit or policy of the law, when the Statute expressly authorizes it to be done. It is believed that the design of the act was "to remove all obstacles from the subject of interest and leave parties free to contract for such rate as they should consider their money worth," imposing no restraint upon them except as to the manner in which the contract should be made. *Mason &*

*Craig, et al, vs. Callender, Flint & Co.,* 2 *Minn. Reports,* 371–374. The effect therefore of the provision requiring the contract to be in writing is the same as that of similar provisions contained in the statute of frauds. There, various contracts are expressly declared to be void, unless the same are in writing. For example, " Every contract that by its terms is not to be performed within one year from the making thereof," also, " every special promise to answer for the debt, default or miscarriage of another person," are of this nature. Yet where such contracts are made without writing, and are carried out and executed by the parties, it would hardly be pretended that the money paid under them could be recovered back. Provisions of this nature, referring to the manner in which parties must contract, are made for the benefit and protection of the promising party, or, more properly speaking, the party sought to be charged—they refer more particularly to the proof necessary to sustain such a contract than to the subject matter of it, and are designed to prevent careless expressions from being perverted into promises, by the misunderstanding or perjury of witnesses. The effect of these statutes may always be waived by the promising party failing to take advantage of them. The defence of the statute of frauds must always be pleaded when it is not apparent on the face of the complaint— *Wentworth vs. Wentworth,* 2 *Min. R.* 277—and a payment without objection is the highest evidence of a waiver. The Defendant can take nothing by his objection that the contract was not in writing.

The question mainly urged by Defendant is, that the payments were made under duress and compulsion. As a matter of fact this is found against him by the Judge who tried the cause, and the position can only be sustained upon the ground that the existence of the mortgage containing the power of sale by which the Defendant's land could have been sold had he refused to pay the increased rates of interest, was in itself a power in the hands of the Plaintiff that in contemplation of law amounted to such duress. I think there are two full answers to this view of the case. In the first place, to bring a case within the rule contended for by the Defendant, the money exacted and paid must be extortionate—must be

46

something more than the party had any right to demand by law, or at least must be so exorbitant and excessive as to fall within a class of contracts relieved against for being unconscionable; as, for 'instance, where an officer has process in his hands by which he may immediately seize the debtor's property, and he obtains from him illegal fees or a greater amount than was actually due. 2 *Greenl. Ev., sec.* 121, where numerous instances of this character are cited. Also, where usurious rates of interest are exacted, the borrower is always regarded as acting under an undue influence. Chief Justice Beardsley speaks of the borrower in such cases as "the slave of the lender; nay, more, a slave in chains and utterly incapable 'of resistance." *Schroeppel vs. Corning,* 5 *Denio,* 240. I would not question the authority of these cases, or the principle contended for by the counsel for the Defendant, in any case where the money exacted by the exertion of an undue influence was an illegal demand; but I maintain that in this case no such element exists. The laws of the State expressly allow the taking of interest to any amount the parties may agree upon, and the provision that it shall be stipulated for in writing, as I have shown, has nothing to do with the morality of the contract, but may be waived by the party contracting in a variety of ways, and in none more emphatically than by voluntarily paying it without question.

In the second place, I do not think the power which the Plaintiff held in his hands, to wit, the mortgage with a power to sell under the Statute, could, under any circumstances, be considered in itself as a sufficient constraint upon the will or independence of the Defendant to amount to legal duress or compulsion. The utmost the mortgagee could have done, would have been to foreclose his mortgage under the Statute. This would involve a publication for at least six weeks of the notice, and then, after sale, the mortgagor would have a full year in which to redeem before he either lost his land or his possession of it. The execution of a power of sale, which the counsel claims is so summary and severe a remedy, will be found, on examination, to be more dilatory and less rigorous than the ordinary foreclosure in Chancery. *Stone vs. Bassett,* 4 *Min. R.* 298, *Opinion of the Chief Justice,* and although

the Defendant does not have his day regularly in Court under the statutory foreclosure, still he may control the proceedings as fully by bill for that purpose as if he was impleaded as a Defendant, sufficiently so at any rate to deprive the proceeding of the harsh features claimed for it, and to remove the idea that the mortgagor supposed it to be held *in terrorem* over him.

If we should admit the theory claimed by the Defendant, the mere holding of any security by the creditor would subject him to the charge of exercising an undue influence over his debtor, on the ground that he could sue him and seize his property on execution if he failed to comply with his demands. The supposed constraint is too remote entirely to be acted upon by Courts as a foundation for annulling contracts between parties. The relation of mortgagor and mortgagee might in some cases be taken into consideration in determining whether oppressive measures had been used to make terms between parties; but alone, the fact fails to produce such result.

In either view, therefore, the defence fails. First, the money paid was neither extortionate nor illegal. Second, the element of duress did not enter into the transaction either in fact or by construction of law.

I think the case of *Bidwell vs. Whitney*, 4 *Minn. Rep.*, 76, adopts principles which cover the case at bar in the view we have taken of it.

Judgment affirmed.