### PETER MUNCH v. BALTHAZAR SHABEL.

*Equity Pleadings and Practice—Amendments—Demurrer—Notice of Hearing—Resulting Trusts—Comp. L., § 4120.*

A bill was amended after hearing by adding allegations explaining matters referred to in the answer; *held*, that a demurrer to the amended bill was null in that it was not confined to the amendments, and did not purport to cover the whole bill, while it pointed out no part of it as demurrable which was separable from the rest.

Amendments to a bill to meet matters set up in the answer may be allowed at or even after a hearing on pleadings and proofs.

A bill and its amendments constitute but one record, and the answers thereto but one.

When the time has expired for answering the amendments to a bill, the case can be noticed for hearing.

Where all the facts and documents that could have been relied on below are before the appellate court, the want of a notice of hearing below will not be ground for reversal; it will only raise a question of costs.

A notice of hearing for any time after the opening of term, but specifying no day, is irregular, and would not authorize an *ex parte* hearing; but the irregularity can be waived.

The prohibition of resulting trusts (Comp. L., § 4120) does not apply where the conveyance is merely the quit-claim of an equity to the owner of the legal estate; this creates no title but only removes an encumbrance.

It has never been held that as against the legal owner of land equities can only be extinguished by conveyance under the statute of frauds.

Specific performance will be refused where it is clearly inequitable to grant it.

Appeal from Bay. Submitted June 14. Decided June 20.

SPECIFIC PERFORMANCE of a contract to convey lands. Schmidt, the complainant's assignor, having a contract right to certain lands, transferred a part of them, Rose Young becoming the holder of his equities therein. He afterwards obtained from the legal owner of the whole a conveyance of the land to Shabel, who having advanced Schmidt money, took the deed as security and contracted to convey to him in two years, on certain conditions, such title as he should have then received. Schmidt, by way of clearing up the title, then obtained from Rose Young a quit-claim to Shabel of her equities, and paid the consideration himself. The bill is to compel the conveyance which Shabel had agreed to give. The answer professes defendant's readiness to convey the legal title as agreed so far as compatible with the preservation in himself of the equitable title subsequently obtained from Rose Young.

*McDonell & Mann,* for complainant and appellee, to the

point that defendant was fraudulently seeking to detain an equity from complainant, cited *Linsley v. Sinclair*, 24 Mich., 380.

*Luther Beckwith* for defendant and appellant. When a complainant, by filing replication, has elected his ground of suit, he cannot, without some excuse, amend by inserting facts known to him when he filed his bill. *Whitmarsh v. Campbell*, 2 Paige, 67; *Vermillyea v. Odell*, 4 Paige, 121; *Rogers v. Rogers*, 1 Paige, 188; *Thorn v. Germand*, 4 Johns. Ch., 363; 1 Barb. Ch. Pr., 214.

CAMPBELL, J. A bill was filed to obtain the conveyance of certain lands which defendant held under an arrangement by way of security, and which he had agreed in writing to reconvey to one Florent Schmidt, who assigned to complainant. A decree was made below in favor of complainant, and defendant appeals. Certain questions of practice are presented, which require preliminary attention.

The case was first heard on pleadings and proofs in June 1876. At or after this hearing the court allowed complainant to amend his bill, which he did by adding allegations explanatory of a transaction referred to in the answer, concerning a transfer from one Rose Young to Shabel, which the amendments showed to have been obtained by Schmidt for the purpose of confirming the title in controversy. Leave was given to defendant to answer the amendments if he chose, but not requiring it. The bill had waived an answer under oath. Leave was also given to take proofs upon any new issue should one be joined. Instead of answering, defendant demurred to the amended bill, and his demurrer was overruled with leave to answer the amendments in twenty days. No answer being put in, the case was heard on pleadings and proofs at the January Term, 1877. The notice for hearing, which was not for the first day in Term, was given on the 8th of January and did not mention any time except the Term. It was heard on the 17th of February.

The demurrer was a nullity, as not confined to the amendments, and as not purporting to cover the whole bill, while

it pointed out no part of it as demurrable which was separable from the rest. Moreover the original answer had covered the particular defense set up. But no harm was done by overruling it.

So far as the amendment is concerned it comes directly within the familiar practice approved by Lord Redesdale and very commonly resorted to, of allowing amendments on the hearing even without further testimony, to meet matters set up in the answer. See Mitf. Pl. (Tyler's Edition), 419; 1 Dan. Ch. Pr., 480. It is analogous to the amendments allowed on trials at law, where omissions are allowed to be remedied with or without a continuance, as justice may require. A similar question arose in *Slater v. Breese, 36 Mich., 77*.

Defendant's counsel seem to have labored under a misapprehension in regard to the effect of amendments in altering the state of the record, and testimony already in. The original and amended bill constitute one record, and "an answer to an amended bill constitutes, together with the answer to the original bill, but one record, as much as if it had been engrossed on the same parchment." 2 Dan. Ch. Pr., 840. Lord Redesdale declares that this is so completely the case that a repetition in an answer to an amended bill, of matters set out in the answer to the original bill, is impertinent, unless so introduced as to substantially vary the defense. Mitf. Pl., 409.

The case, on the expiration of the time to answer the amendments, was ready for hearing on the record as it stood, and could be properly noticed.

It is claimed, however, that the notice given was invalid, and that the case was not properly heard, and the decree should be reversed for that reason. *Jenny v. O'Flynn*, 5 Mich., 215, is relied on as maintaining this doctrine.

It was held in that case that a decree should be reversed where by reason of there having been no notice of hearing the party had been deprived of substantial rights which he might have saved if present. But in the subsequent case of *Kellogg v. Putnam*, 11 Mich., 344, it was also held that hearing without notice would not entitle a party to reversal,

where no right was destroyed which would have placed the party at a greater advantage in the appellate court; and such we think is the proper rule. Where the case can be heard on appeal on the only facts and documents which could under any circumstances have been relied on below, the appellant is fully protected; and the discretion over costs will enable the court to rectify any grievance that can fairly be asserted out of the omission.

The only omission in the notice of hearing was that it mentioned no day. Under the rules cases noticed for any time after the opening of term are placed at the foot of the docket; and while such notices are irregular and would not authorize an *ex parte* hearing, the irregularity may be waived, like any other matter of practice.

After the hearing below, a motion was made to open it based on no affidavit of merits or of surprise, and setting up no ground beyond the bare fact that no written notice had been served except the one referred to. This notice having been served on the 8th of January, and the term having continued six weeks longer, a new notice could have been given, had any motion been made to strike the cause from the docket. The objection was purely technical.

In opposition to this motion it was shown by affidavit that defendant's solicitor knew the cause was on the docket, and had requested complainant's counsel to let him know when it would be called on. That on the 17th of February notice was sent to him, and that he sent his files and brief to the opposing counsel, with a written request to call Judge Holmes' attention to the fact that the case would be called on, which was complied with, but Judge Holmes declined to intermeddle with the hearing because he had only been employed on the hearing of the demurrer and was not familiar with the facts. The hearing proceeded, and was confined to the single new matter of the amendment and defendant's brief was submitted, and the defendant was informed of the decree immediately and within three days after its announcement.

Upon this showing the court below refused to disturb the decree. We do not think these occurrences deprived

appellant of any thing he could have done to change the record as now presented. The case is properly before us on the merits.

On the principal issue there is no defense whatever. But upon one portion of the case a claim is set up which requires some consideration, and renders some statement of facts desirable.

On the 4th of April 1872, Henry S. Raymond was the owner in fee of three quarter sections of land in Bay county, being the west half of the northwest quarter, and the northwest quarter of the southwest quarter of section 29, in town 13 north of range 6 east, and contracted to sell the same to John Young for $1,200, and Young took possession and made some improvements.

On the 13th of September 1873, Young assigned this contract to Florent Schmidt, who paid therefor $980 to Young, and $569.97 to Raymond, and assumed the remaining sum still coming to Raymond of $400, making the whole sum payable and paid in money $1,949.97.

On the same day Schmidt transferred to Young about two acres on the northwest quarter of the northwest quarter of section 29, being a small detached parcel separated from the rest by a highway, and on the 14th of October thereafter assigned to Rose Young, his wife, the northwest quarter of the southwest quarter.

It appears somewhat vaguely, that Schmidt not far from this time married a daughter of Young, and that his wife soon separated from him, and family difficulties arose which impressed him with a belief that he would be cheated out of his property. He entered into negotiations with Shabel to dispose of the property to him and get two years' time to redeem it, and in case he could not do so, then Shabel was to pay him an additional sum of $800. Accordingly Shabel advanced $400 to pay Raymond, and Schmidt procured a warranty deed in fee simple from Raymond to Shabel, January 13, 1874, and Shabel gave him an agreement signed by both parties, providing that if Schmidt within two years should pay the $400 with ten per cent interest, and

pay Shabel for any improvements he might make on the three forty-acre lots, Shabel would convey the eighty acres in the northwest quarter by warranty deed, and the other forty by the title he then received. And in case Schmidt did not redeem, Shabel agreed to pay $800 in two years from date.

Immediately after this, Young quit-claimed the two-acre tract to his wife Rose Young, who not long afterwards (but just when does not appear), commenced a suit against Shabel and Schmidt, the only evidence of which is found in the stipulation of counsel that it was brought "to enforce a homestead right of Rose Young upon the northwest quarter of the northwest quarter of section 29, as well as to enforce a contract for the conveyance of the northwest quarter of the southwest quarter of section 29."

Schmidt, in order to perfect the title in Shabel, settled with Mrs. Young, and procured her to quit-claim whatever interest she had in the whole 120 acres to Shabel, on the 21st of April 1874. In making this arrangement he paid Mrs. Young out of his own means all that he gave her, and borrowed $125 of Shabel for settling the costs and expenses. This loan is sworn to have been an independent transaction, and to have been paid in part by work, leaving some balance, but how much is not shown, unpaid.

Schmidt subsequently transferred his rights to complainant, who in November 1875 made a tender to Shabel of $627.17 which he refused to accept, but did not explain how much he demanded. This sum included besides interest, $72.75 for improvements and the same amount for ditching, and $5 for removing a tree top. The court below found this the correct amount, but was not satisfied the tender was so made as to stop interest, and decreed a conveyance on payment of that amount with interest, amounting in all to $699.84. By some blunder, the decree was made to cover the entire northwest quarter of section 29, instead of the west half of that quarter. The appeal is from the entire decree. The controversy, however, is chiefly confined to the forty acres on the southwest quarter in which Rose Young claimed an equity. So far as the computation

of money is concerned, we think it substantially correct, and large enough.

The only ground for claiming the omission of this forty-acre lot, is that under our statute concerning resulting trusts, Schmidt, by allowing Rose Young to convey to Shabel her interest, precludes himself from setting up any resulting trust in his favor, arising out of his payment of the purchase money.

We do not think the doctrine applicable to the case. Shabel already held the only legal title, and had contracted to convey it to Schmidt. The interest of Mrs. Young, whatever it was, purported to be a mere right in equity to the confirmation by a deed from the legal owner of an equitable interest, the whole consideration of which was not paid to Mr. Raymond when she succeeded to it. Her claims appear to have been of a mixed character, including some homestead interest, which, so far as the testimony shows, was unfounded. And it may be inferred that there were other questions in dispute. The effect of a quit-claim of an equity, real or supposed, to the owner of the legal estate, is not the creation of a title, but the removal of an encumbrance, and both Schmidt and Shabel so regarded it. Shabel states this explicitly in his testimony. Equity will not permit an interest which is only called a title by virtue of equitable analogies, and which in law is a mere right of action, to be turned to fraudulent purposes by the aid of its own jurisdiction. It has never been held that as against the legal owner of land equities can only be extinguished by conveyance under the statute of frauds. Specific performance will be refused in all cases where it is clearly inequitable to grant it; and Mrs. Young's quit-claim, which covered all three of the parcels, in some of which she never set up any equities, while it was a convenient form of release, was nothing more than a release of a right resting in contract, which would not have been recognized as a perfect title in any court.

The decree must be corrected by leaving out the parcel erroneously inserted, and in consideration of all the circum-

stances of the hearing, although complainant prevails on all the matters litigated, and was desirous and willing to release from the decree the parcel referred to, which the record itself furnished the means of correcting, we are not disposed to grant him costs of this court. He was entitled to costs below, but as the circumstances of the hearing were peculiar, we shall affirm the decree with that omission, and leave the parties to pay their own costs in this court.

COOLEY, C. J. I concur in the result.

The other Justices concurred.