EDWIN A. WETMORE AND WILLIAM L. WETMORE v. ISAAC NEUBERGER.

*Supplemental parol contract for interest in land—Part performance construed as grant of license—Assignment of right of action.*

A written contract was supplemented by an oral agreement whereby one of the parties was to advance money and use it in buying an interest in land for the other. *Held*, that under the statute of frauds the arrangement had no force (Comp. L. § 4692) and that as the obligation to buy could not bind the other party he could not be charged with the cost of executing such obligation.

So far as the parties to an oral agreement for the sale of standing timber execute it in good faith before it is revoked, the sale may, for their protection, be regarded as a license for what has been fairly and seasonably done. *Greeley v. Stilson* 27 Mich. 153; *Haskell v. Ayres* 35 Mich. 89.

The assignment after maturity of a note given in pursuance of a contract does not necessarily transfer to the assignee a right of action for a breach of the contract, or entitle him to base a claim thereon in order to cancel a set-off against the note. An action on the note by the assignee would not bar an action by the assignor for breach of contract.

Error to Marquette.  Submitted June 17.  Decided Oct. 13.

ASSUMPSIT.  Defendants bring error.  Reversed.

*F. O. Clark* for plaintiffs in error.

*E. J. Mapes* for defendant in error.

GRAVES, J.  This case was first tried before a justice of the peace, and was taken by appeal to the circuit court.  The action was brought by Neuberger as indorsee of a promissory note given by the Wetmores in their partnership name of E. A. Wetmore & Co. to Martin Pattison or order, on the 26th of August, 1878, for $250, payable thirty days after date at the Citizens' Bank at Marquette.  The Wetmores pleaded the general issue with notice of set-off, and the jury finding in favor of Neuberger they brought error.  The fact is unquestioned that the note was given as alleged and that Pattison the payee transferred it to Neuberger after maturity. Again, there is no dispute about the origin of the note.  It grew out of a lumbering transaction between the Wetmores and Pattison.

May 17, 1878, they entered into the following written agreement: "Memorandum of agreement between Martin Pattison, of the city of Marquette, of the first part, and E. A. Wetmore & Co. of same place of second part, witnesseth: That said Pattison agrees to get out and deliver to said Wetmore & Co. at Marquette in such booms as shall be furnished, Norway logs enough and of suitable length and sizes and qualities entitled to work into the following bill and to work to good advantage and make lumber suitable to be accepted by the parties contracting with said Wetmore & Co. as follows: 200 pieces 5x12—28 feet long, for car sills; 200 pieces 5x12—30 feet long; 1500 pieces 4½x8—28 feet long; 800 pieces 4½x8—30 feet long; 600 pieces 3½x6—28 feet long; 400 3¼x6—30 feet long; 400 pieces 5x13—33 feet long; 800 pieces 4¾x8—33 feet long; 400 3¼x6—33 feet long; 150 thousand feet 2x10—16 feet long; 150 thousand feet 2x10—

18 feet long, to be good, live sound timber. The logs to be cut and delivered as soon after June 1st, 1878, as can be conveniently done, and all to be delivered by September 1st, 1878.

"In consideration of the above delivery said Wetmore & Co. agree to pay said Pattison five dollars per thousand board measure, scaled in the boom at their mill, and to guaranty said Pattison that he shall not pay over fifty cents per thousand for towing said logs and not to exceed one dollar per thousand feet stumpage on any land owned by Lac La Belle Co., Marquette Lumber Co., or W. L. Wetmore and Bay Furnace Co.

"Final settlement to be upon the delivery of all such logs; also said Pattison is to cut and deliver to said Wetmore & Co. white pine logs up to 200,000 feet, board measure, of good sound logs not culled out for board timber, but taken as the timber will cut, taking all good, sound trees, and to be cut such lengths as may be directed by said Wetmore & Co., and for such logs said Wetmore & Co. are to pay to said Pattison four dollars and fifty cents and to give same guaranty as to cost of towing as with the Norway logs named above, and payments on both Norway and white pine to be made as work progresses so as to enable work to go on. In scaling logs all logs over 24 feet to be scaled in two lengths."

On the strength of this contract Pattison cut and delivered to the Wetmores a great quantity of logs and they in return made heavy payments and advances and the note in suit was given to be applied upon the contract. The Wetmores claim that on occasion of its coming due and also on its transfer subsequently to Pattison and at the time of their getting notice of the transfer, their payments and advances were in excess of the entire demands in favor of Pattison to an amount considerably beyond the sum called for by the note and that such excess was and is a lawful set-off fully sufficient to extinguish it.

Assuming Wetmore's explanation of the state of the account to be correct, it appears that there existed and now exists a balance in their favor of between four and five hundred dollars. The validity of this balance is accordingly important.

The plaintiff below has assailed it and the questions in the case arise out of that contest.   The contract quantity of logs was not furnished; but the plaintiff below avers that the agreement was broken by the Wetmores.   It was part of their contract with Pattison that he should not be bound to pay above one dollar per thousand feet stumpage on any land owned by Lac La Belle Co.

On the 4th of June following they made a purchase of the stumpage on certain land, which, according to the indications in the case, was Lac La Belle Co. land, and they claim to have paid $1000 for it.   In their account they charge Pattison with this $1000 in this form: "August 3. Paid Lac La Belle Co. stumpage as per verbal agreement with Martin Pattison about May 12, 1878, $1000."   It is conceded that Pattison cut enough there to come within a trifle of $600 at the stumpage rate of one dollar per thousand, or the rate which the Wetmores had agreed by their written contract should be the outside limit; and the court ruled in substance that the charge in the account was a proper one to that extent.   The rest of it was the subject of earnest controversy but the record is much confused.

There was no writing between Pattison and the Wetmores in regard to their buying for him or on his account this body of stumpage for $1000 and the written purchase actually made was in their own name and apparently on their own account.   Their claim seems to be, in reference to it, that subsequent to their written agreement with Pattison of May 17th it was orally agreed between them that they should buy this tract of stumpage at $1000 and pay therefor and that he would take it in their business arrangements and pay them the $1000 so that they should be exposed to no risk, and that they made the purchase on that understanding and debited him with the expense in their account.   Assuming this explanation to be true the transaction was within the statute of frauds and the objection raised on that theory was well taken.   The scheme contemplated that the Wetmores should provide the purchase money in advance, and in virtue of a power from Pattison expend it in buying an interest in

land in his favor. Such an arrangement is destitute of force unless manifested by writing: Comp. L. § 4692; *Russell v. Myers* 32 Mich. 522; *Colgrove v. Solomon* 34 Mich. 494; *Hillebrands v. Nibbelink* 40 Mich. 646. The contract was entire and the stipulation for the Wetmores to advance the money cannot be separated from the rest.

If the power and obligation to buy for his benefit fall for want of writing and have no force to bind him, the right to charge him with the cost of executing the power and carrying out the obligation must share the same fate. *Greeley v. Stilson* 27 Mich. 153, and *Haskell v. Ayres* 35 Mich. 89 do not apply. Their doctrine is that so far as parties, before revocation, execute in good faith an oral agreement for the sale of standing timber, the sale may, for the purpose of their protection, be considered as a license for what has been fairly and seasonably done.

After the defense rested, the case of set-off made on that side was sought to be opposed by a kind of counter claim on the part of Neuberger, the plaintiff below, and the court, proceeding on the idea that the matter produced by the Wetmores as set-off might be so encountered and be wholly or partly neutralized or extinguished in that way, received evidence to show unliquidated damages caused to Pattison by certain alleged breaches by the Wetmores of the contract of May 17th, and this evidence was submitted to the jury and seems to have been acted on.

In this the court erred. The right of action, if any, on account of a violation by the Wetmores of that contract does not seem to have become the property of Neuberger, and there is no apparent ground entitling him to make use of it to swell his own claim, or which is the same thing, to reduce or cancel the set-off. For all that appears, whatever cause of complaint may have arisen for any breach of the contract on the part of the Wetmores still belongs to Pattison, and in case the subject is gone into in this action in favor of Neuberger, there is no reason for supposing it would preclude Pattison from hereafter suing the Wetmores for the same thing. This case would be no bar. Hence, whether the

general state of the litigation and the nature of the counter claim as unliquidated damages, would or would not alone hinder the introduction of such matter in rebuttal, the objection to it just stated is sufficient.

Complaint is made of rulings concerning three items of charge for money paid for towage, but the record is so ambiguous that it is hardly safe to attempt their investigation. It is not very probable they will turn out to be essential to the disposal of the case.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.