## WILHITE VS SKELTON.

Opinion delivered October 19, 1904.

1. *Contract—Presumed to be Written—Statute of Frauds—Not Raised by Demurrer.*

   Where, in an action upon a contract, the complaint does not state whether same is written or verbal, the presumption is that it is written and a demurrer cannot raise the question of the statute of frauds as to such contract.

2. *Admission of Counsel—In Argument—Conclusive.*

   In an argument upon a demurrer an admission of counsel that a contract was verbal will be conclusive as to him, when the ruling of the trial court, based thereon, is presented to this court for review.

3. *Contract—Statute of Frauds—Law of Other States Presumed to be Same as Those of Forum.*

In an action on a contract relating to lands in another state, the statute of frauds of such other state will be presumed, in absence of proof, to be the same as that of the forum.

4. *Contracts—Parol—For Purchase of Interest in lands—Void.*

A parol contract for the purchase of an interest in lands for another being within the statute of frauds, is void for all purposes and cannot raise a trust or form the basis of title.

5. *Equity—Courts of Will not Decree Performance of Vague and Indefinite Contracts.*

A court of equity in the Indian Territory should not undertake to enforce an agreement to operate an oil lease in Oklahoma where the agreement is wholly indefinite as to manner of working and extent of operations.


Appeal from the United States Court for the Northern District.


JOSEPH A. GILL, Judge.


Action by Ola Wilhite against L. A. Skelton and another. Judgment for defendants. Plaintiff appeals. Affirmed.


On the 29th, day of July, 1903, the plaintiff below, and appellant here, filed his complaint against the defendants below, appellees here. On October 12, 1903, defendants filed a demurrer to said complaint. On October 13, 1903, plaintiff filed an amended complaint, and on October 14, 1903, defendants filed demurrer to said amended complaint.


In said amended complaint, plaintiff says: That in April, 1903, he was negotiating for the purchase of a lease for mining oil and gas known as No. 44, from the Ontarial Osage Oil Company, made by the Indian Territory Illuminating Oil Company about September, 1902, and running until April, 1906, to the

said Osage Oil Company, for 1,100 acres of land lying in the Osage Indian Reservation. That defendant Skelton was contemplating the purchase of the same lease. It was thereupon agreed between plaintiff and said defendant Skelton that they would purchase said lease on joint account. Ascertaining the same could be purchased for $15,000.00, they agreed to purchase and operate the same together; plaintiff to pay $3,000.00 and defendant Skelton, $12,000; plaintiff to have one-fifth and Skelton four-fifths interest. It was agreed that payment should be made through the Bartlesville National Bank, and transfers of lease at same time. They failed to meet at said bank as agreed. Plaintiff deposited sufficient funds at said bank to cover his part of the deal, but, before transaction was closed, plaintiff was taken sick, and had to go to Hot Springs, Ark.; but before leaving, and before money was paid, he left his check for $3,000, payable to defendant Skelton, with the cashier of said bank, for his part of said funds. That same remained with said cashier until May 1, 1903, when defendant Skelton came to said bank to make said payments. Said cashier, before said payments were made, offered said check to Skelton. Said Skelton said to said cashier he would advance the money for plaintiff, and would arrange matter with plaintiff when he returned. In that manner defendant Skelton acquired said lease. When plaintiff returned, said Skelton put matter off until June 25, 1903, when he refused to allow plaintiff to share in said lease. That defendant Moore claims to have purchased from Skelton some interest in said lease. That plaintiff believes said lease is of value, and has insisted to be allowed to make said payment according to contract, and is now ready to do so. That said money has remained at said bank to be paid to said Skelton whenever plaintiff is allowed to share in said lease according to contract. That the defendants have derived profit from said lease, and plaintiff, in equity, ought to be allowed to make payment and contribute his share of expenses, and share one-fifth of

profits, but defendnts deny his right so to do. Plaintiff asks for an accounting, and that decree be rendered that plaintiff is entitled to one-fifth interest in the lease, and requiring a conveyance to him of the same and for costs.

On October 14, 1903, the defendants filed the following demurrers to said amended complaint:

"Come now the defendants L. S. Skelton and Richard Moore, by S. S. Kirkpatrick, their attorney, and demur to the complaint in equity herein filed against them for the following reasons and causes, to wit: First. It appears from the face of said complaint in equity that this court has no jurisdiction over the subject-matter of this action, the lands embraced in the lease mentioned being located in the territory of Oklahoma. Second. That said complaint in equity wholly fails to state facts constituting a cause of action ·in favor of the plaintiff and against either one of these defendants. Third. That it appears from the face of said complaint that said plaintiff is not entitled to the relief demanded in his complaint, and for that reason the plaintiff cannot recover. S. S.Kirkpatrick Attorney for Defendant."

"The defendant Richard·Moore demurs to the amended complaint of the plaintiff herein, and for reason states: First. It appears from the face of said complaint that this court has no jurisdiction of the subject of the action, Second. It appears from said complaint that it does not state facts sufficient to constitute a cause of action. Wherefore defendant prays judgment that he be not required to plead further. Magee & Smith & Rogers, Attys. for Moore."

On the 18th day of February, 1904, "the demurrers of defendants Skelton and Moore to the amended complaint herein coming on to be heard, the same are submitted to the court for a

decision, and the court, after hearing the arguments of the counsel for the plaintiff and the arguments of the counsel for the defendants, sustained said demurrers; and to the action of the court in sustaining said demurrers the plaintiff then and there excepted. And thereupon the plaintiff declines to amend further, but elects to stand upon his complaint. It is therefore ordered and adjudged that the plaintiff herein take nothing by reason of the suit herein, and defendants herein do have and recover of and from the plaintiff herein their costs herein laid out and expended, to be taxed by the clerk, for which execution is awarded. And to the action of the court in rendering said judgment the plaintiff then and there excepted, and still excepts. And thereupon the plaintiff prays an appeal from the judgment herein to the United States Court of Appeals for the Indian Territory, and the said appeal is allowed."

*W. H. Kornegay, W. A. Chase,* and *G. B. Denison,* for appellant.

*S. S. Kirkpatrick* and *Edgar Smith,* for appellees.

TOWNSEND, J. The appellant (plaintiff below) has filed three specifications of errors, as follows: "(1) The trial court committed an error of law in the ruling and decision sustaining the demurrers of the defendants to the amended complaint, which error was duly excepted to at the time. (2) The trial court committed an error of law in the ruling and decision that the amended complaint was insufficient to entitle the plaintiff to relief, which error was duly excepted to at the time. (3) The trial court committed an error of law in making a final decision against the plaintiff and in favor of defendnt, which error was duly excepted to at the time."

The second contention made by appellant is that the validity of the contract between appellees and appellant cannot

be determined by means of a demurrer to the amended complaint, which will be first considered; that the complaint alleged the contract was made; and that it is not stated that the contract was in writing. It appears well settled that a contract within the statute of frauds cannot be raised by demurrer where it does not appear from the face of the complaint whether the contract was verbal or in writing. That it will be presumed to be in writing, if necessary it should be, see Speyer vs Desjardins (Ill.) 32 N. E. 283, 36 Am. St. Rep. 473; Wentworth vs Wentworth, 72 Am. Dec. 97. It is held in Minnesota that the defense of the statute of frauds must always be pleaded when it is not apparent on the face of the complaint. Nutting vs McCutcheon, 5 Minn. 389 (Gil. 310). A promise will be presumed to have been reduced to writing unless the contrary appears. Walsh vs Kattenburgh, 8 Minn. 131 (Gil. 99). But if it is stated generally that an agreement or contract was made, the court will presume it was a legal contract until the contrary appears; and the defendant must either plead the fact that it was not in writing, or insist upon that defense in his answer. Cozine vs Graham, 2 Paige, 177, 2 N. Y. Ch. 863. The allegation that a contract was made is sufficient, under the Code, without alleging that it was in writing. Livingston vs Smith, 14 How. Prac. 493.

Appellant, however, states in his brief the following proposition: "An admission by counsel during the progress of an argument upon a demurrer as to the facts cannot be considered by the court in ruling upon the demurrer." Appellees dispute that proposition. In Thompson vs Marley, 102 Mich. 479, 60 N. W. 976, the court said: "Upon the hearing in the court below, the learned circuit judge filed a written opinion, from which we quote with approval as follows: 'It will be observed that the bill does not allege, in terms, whether the trust claimed with reference to the first deed was by parol, or declared by some instrument in writing. The court, however, on the argument

of the demurrer, noticing that fact—i. e., that it was not alleged whether the trust was by parol or in writing—inquired of the complainants' solicitor whether there was any written declaration of the trust, and was informed by him that there was none; and from the framework of the bill, as well as by the statement made by complainants' solicitor, the court is satisfied that there was no written declaration of the trust claimed with reference to the deed of September 15, 1891, and, if there was a trust by the understanding of .the parties, that it was a parol trust, and not one declared in writing.' " It appears that the court below filed a written opinion, and the Supreme Court were advised by that. The counsel admitted on the argument of the demurrer "that there was no written declaration of trust." In Lindley vs A., T. & S. F. R. Co., 47 Kan. 432, 28 Pac. 201, it appears that the counsel for plaintiff made a statement of his case to the jury which showed that the plaintiff was guilty of such contributory negligence as would preclude a recovery against. defendant. Thereupon defendant objected. The court sustained the objection, discharged the jury, and rendered judgment for the defendant. Plaintiff appealed. The court said: "The first question presented is whether the court may dispose of the case upon the statement made by the plaintiff in opening his case. 'Such a statement is a part of the procedure of the trial. The Code provides that when the jury is sworn the plaintiff or party who has the burden of proof may proceed to state his case to the jury, and the evidence by which he expects to sustain it. Civ. Code, § 275. If the statements or admissions then made are such as to absolutely preclude a recovery, it would be useless to consume further time or to prolong the trial. The court is warranted in acting upon the admission of the parties, the same as upon the testimony offered; and, as it may sustain a demurrer to the evidence of the plaintiff, and give judgment against him, it would seem that when he stated or admitted facts which were fatal to a recovery the court might close the case at once. The same ques-

tion arose in like manner in Oscanyan vs Arms Co., 103 U. S. 261, 26 L. Ed. 539. Justice Field, who pronounced the judgment of the court, stated that 'the power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced. The question in either case must be whether the facts upon which it is called to instruct the jury be clearly established. If a doubt exists as to the statement of counsel, the court will withhold its directions, as where the evidence is conflicting, and leave the matter to the determination of the jury. In the trial of a cause the admissions of counsel as to matters to be proved are constantly received and acted upon. They may dispense with proof of facts for which witnesses would otherwise be called. They may limit the demand made or the set-off claimed. Indeed, any fact bearing upon the issues involved, admitted by counsel, may be a ground of the court's procedure, equally as if established by the clearest proof. And if, in the progress of a trial, either by such admission or proof, a fact is developed which must necessarily put an end to the action, the court may, upon its own motion, or that of counsel, act upon it and close the case.' If the statement made to the court and jury by the plaintiff showed beyond dispute that the injuries which he received were the result of his own negligence, he could not recover anything from the defendant, and it would have been idle to have proceeded further with the trial of the cause. It is contended, it is true, that the statement made contained no fatal admission, or any statements which justified the action of the court; but, unfortunately for the plaintiff, the statement is not found in the record. It follows that the statement is not before us for consideration, and therefore the ruling and judgment of the district court must be affirmed."

Appellees, in their brief, upon this question, say: "However there would, seem to be no necessity for discussing these

propositions, inasmuch as the counsel in the court below, on the argument of the demurrer, specifically admitted that the contract was not in writing, and the lower court was induced to pass upon the demurrer with that admission as to the contract. That this admission was made is apparent from the counsel's reference to it in his brief, on page 11, wherein it is claimed that such an admission could not properly be considered by the court. Now, assuming that the admission was made—and there is no doubt of it, nor is there any doubt that the contract was verbal—it would seem that this court would decline to consider the proposition now made that the admission was not binding. It is the province of a court of equity to arrive at justice between the parties, and where the trial court, through some admission of the attorney, is induced to make a ruling on a demurrer that might not be authorized in the absence of such admission, the appellate court will not permit the party to withdraw his admission and pass upon a different question than that submitted to the court below. If there is one rule more firmly established than another, it is that Appellate Courts will decline to pass upon questions not submitted to the court below, and in this case for the Appellate Court to pass upon the question as though no admission that the contract was not in writing had been made, would clearly be unjust to the trial court." If it be true, as stated by appellees, that the admission was made by counsel for appellant in the court below, and the court made its ruling based upon that admission, it would be very unjust to this court to endeavor to conceal the same. So this court, in arriving at its conclusions, would not be advised what the court below had before it when passing upon these demurrers.

Appellant says, "Conceding, for the purposes of the argument only, that this is a case in which the question of the statute of frauds can be raised, what statute of frauds applies?" and insists that, because the lands lie in Oklahoma Territory, if the

statute of frauds can be raised, it would be the statute of frauds in force in that jurisdiction, and not the statute of Indian Territory, where the contract was made. But appellees insist: "With reference to this matter the rule is well settled, without a dissenting decision, that courts will not take judicial notice of the laws of other states and countries, but, in the absence of an allegation and proof to the contrary, will presume them to be similar to our own." In Scroggin vs McClelland, 37 Neb. 644, 56 N. W. 208, 22 L. R. A. 110, 40 Am. St. Rep. 520, the court said: "The court cannot take judicial notice of the law of another state, but, in the absence of proof, it will be presumed to be like that of our own. Lord vs State, 17 Neb. 526, 23 N. W. 507; Bailey vs State, 36 Neb. 808, 55 N. W. 241. Presuming the law of Illinois to be the same as our own, the action had been barred by the laws of that state at the time it was commenced here, and was therefore barred here." In Meuer vs Chicago, etc., Ry. Co. (S. D.) 59 N. W. 945, 25 L. R. A. 81, 49 Am. St. Rep. 898, the court said: "There is some conflict in the decisions of the different courts upon the question as to whether or not the court will presume that the law of another state is the same as the statute law of the state where the action is tried, but the weight of authority seems to support this view. In the case of Palmer vs Atchison, etc., R. Co., 101 Cal. 187, 35 Pac. 630, decided by the Supreme Court of California in the present year, the court says: 'The cause, so far as can be determined from the record, was tried upon the theory that the law of California is applicable. There is no suggestion that the law of Missouri, where the contract for transportation was made, was put in evidence. Under such circumstances, we are not at liberty to assume as a fact that the state of Missouri has a special statute on the subject, but must presume, as a question of law, that the law of that state is the same as our own. Norris vs Harris, 15 Cal. 226; Hill vs Grigsby, 32 Cal. 56; Taylor vs Shew, 39 Cal. 540, 2 Am. Rep. 478; Brown vs San Francisco Gaslight Co., 58 Cal. 426; Marsters vs

Lash, 61 Cal. 622; Shumway vs Leakey, 67 Cal. 458, 8 Pac. 12.' "
In Furrow et al. vs Chapin, 13 Kan. 107, the court said:  "*    *
But in the absence of proof, we should presume that laws similar
to our own exist everywhere throughout the civilized world.
*    *    *"

Appellees insist, under the rule laid down in the foregoing
cases, that the statute of frauds in force in this jurisdiction will
apply to this case, where the contract was made and the suit is
instituted, and that the case made in the complaint is within the
statute, and cite Robbins vs Kimball, 55 Ark. 416, 18 S. W. 457,
29 Am. St. Rep. 45, in which the court said:  "If Kimball ob-
tained the title to the land in controversy with his own means
under a parol agreement with Robbins to let him have an interest
in it on condition that he would pay one-half the expenses in-
curred in acquiring the title, the contract would be void by reason
of the statute of frauds, and Robbins could take nothing through
it.   It could not be enforced for the further reason that Robbins
has not complied or offered to comply with the condition by pay-
ing his share of the expense which it is admitted Kimball right-
fully incurred.   If the agreement was that Kimball was to pur-
chase for the joint benefit of himself and Robbins, but the title
was taken to himself alone, the contract would still be within the
statute of frauds.   If he used none of Robbins' means in making
the purchase, there would be only the breach of a parol agree-
ment, which cannot raise a trust or form the basis of a title."

We are of the opinion that the case made in the complaint
is within the statute of frauds, and if Skelton purchased for the
joint benefit of himself and Wilhite, and the title was taken to
himself, it is within the statute; and, if he used none of Wilhite's
money, there would be only the breach of a parol agreement,
which cannot raise a trust, or form the basis of a title.   And if it
was admitted in the argument of the court below, that this con-

tract was not in writing, the question could be raised by demurrer. In Raub vs Smith, 61 Mich. 543, 28 N. W. 676, 1 Am. St. Rep. 619, the court said: "This statute has frequently been before this court for construction, and it has been held that a contract which is void under the statute of frauds cannot be used for any purpose. Chamberlain, vs Dow 10 Mich. 319; Hall vs Soule, 11 Mich. 494; Holland vs Hoyt, 14 Mich. 238; Grimes vs Van Vechten, 20 Mich. 410; Scott vs Bush, 26 Mich. 421, 12 Am. Rep. 311; Detroit, H. & I. R. Co. vs Forbes, 30 Mich. 176; Hillebrands vs Nibbelink, 40 Mich. 646; Sutton vs Rowley, 44 Mich. 112, 6 N. W. 216. Such a contract is regarded as a nullity. It has also been held that not only is a verbal contract for the sale of lands void, but that a verbal agreement by one to purchase an interest in lands for another is void. Dwight vs Cutler, 3 Mich. 573, 64 Am. Dec. 105; Bomier vs Caldwell, 8 Mich. 463; Hogsett vs Ellis, 17 Mich. 364, 365; Abell vs Munson, 18 Mich. 312, 100 Am. Dec. 165; Scott vs Bush, 26 Mich. 418, 12 Am. Rep. 311; De Moss vs Robinson, 46 Mich. 62, 8 N. W. 712, 41 Am. Rep. 144; Wetmore vs Neuberger, 44 Mich. 362, 6 N. W. 837."

What has heretofore been said is probably all that is necessary to say in the decision in this case, but appellant first discussed the case under the inquiry, had the court jurisdiction? and says: "The rule as to equitable jurisdiction over the person, when properly served, even to the extent of compelling him to execute transfers of property lying outside of the territorial jurisdiction of the court making the order, is well established." Appellees concede the proposition as stated, but say: "* * * But we do contend that the matters stated in the bill of complaint are not such as to warrant a court of equity in assuming jurisdiction and decreeing specific performance of the alleged contract." In Knott vs Shepherdstown Mfg. Co., 30 W. Va. 790, 5 S. E. 266: "It is a familiar doctrine that a court of equity will not exercise its jurisdiction to grant the remedy of an affirma-

tive specific performance, however inadequate may be the remedy of damages, whenever the contract is of such a nature that the decree for its specific performance cannot be enforced and its obedience compelled by the ordinary processes of the court." In Rust vs Conrad, 47 Mich. 449, 11 N. W. 265, 41 Am. Rep. 715, Judge Cooley, in his opinion, said: "When a party to a contract appeals to a court for its specific performance, he addresses himself to the judicial discretion. The relief he asks is altogether exceptional, for the general rule is that the party who complains that another has failed to fulfill his engagements is supposed to have adequate redress at law in recovery of damages. The court may therefore refuse to grant specific performance in any case where, in its judgment, equity does not require it. McMurtry vs Bennette, Har. Ch. 124; Smith vs Lawrence, 15 Mich. 499; Blanchard vs Detroit, etc., R. Co., 31 Mich. 43, 18 Am. Rep. 142; Berry vs Whitney, 40 Mich. 65; Willard vs Tayloe, 8 Wall. 557, 19 L. Ed. 501; Williams vs Williams, 50 Wis. 311, 6 N. W. 814; Mather vs Simonton, 73 Ind. 595. In a few cases a party is suffered to invoke this extraordinary jurisdiction of a court of equity, when it is manifest that the remedy at law is inadequate. But when a party comes into equity it should be very plain that his claim is an equitable one. If the contract is unequal, if he has bought land at a price which is wholly inadequate, if he has obtained the assent of the other party to unreasonable provisions, if there are any indications of overreaching or unfairness on his part, the court will refuse to entertain his case, and turn him over to the usual remedies. Chambers vs Livermore, 15 Mich. 381; Munch vs Shabel, 37 Mich. 166; Mississippi, etc., R. Co. vs Cromwell, 91 U. S. 643, 23 L. Ed. 367; Burton vs Le Roy 5 Sawy. 510, Fed. Cas. No. 2,217. If, for example, the contract is so drawn that the vendor has the option to retain the property or to convey it, performance in his behalf will be refused. Maynard vs Brown, 41 Mich. 298, 2 N. W. 30. And in each case the court will consider whether, in view of all the facts and those

doctrines which are interwoven, with the very texture of equity jurisprudence, and in view of the specific peculiarities presented, and the settled principles and maxims of the court, it is right and proper to entertain the case and administer relief. * * * It is also assigned as a reason why specific performance should not be decreed in this case that the terms of the contract, as respects the manner of working, the extent to which operations should be carried on, and the consequent royalty, are such that they can-not be enforced so as to do justice to the defendants after lease given, without the constant supervision of the court so long as the lease shall continue, to compel the lessees to proceed with their operations, and to prosecute mining to such an extent as shall be reasonable and just." In the complaint it is alleged: "That it was the purpose of both plaintiff and defendant Skelton to operate under said lease, and to extract the oil and gas con-tained in the land. That, in order to promote their mutual interests, and to be of assistance each to the other both in pur-chasing said lease and operating the same, it was mutually agreed between the plaintiff and said Skelton that they would purchase said lease, if possible, and that the purchase should be on joint account, and that both parties should use their endeavors and efforts to that end. * * * That the plaintiff believes that the lease is of value, and has at all times insisted upon being allowed to make the payment according to contract, and has at all times stood ready and willing to make said payment and to contribute his part of the operating expenses, and is now so ready. * * * That the plaintiff, in equity and good con-science, ought to be allowed to make the payment, and to con-tribute his part of the expenses and share one-fifth of the profits, and that the defendants deny his right so to do. That he stands ready to make such payments as the court may order, and he asks that an accounting be had between the parties, and that a decree be rendered to the effect that the plaintiff is entitled to one-fifth interest in the lease, and requiring a conveyance to him

of the same. * * *" Is it not apparent that the court would be compelled to have constant supervision, as respects the manner of working and the extent to which operations should be carried on? For specific performance is asked not only to compel the transfer of a one-fifth interest, but also to operate the mine; and the agreement, as alleged, is silent as to the details of the manner of working, and the extent to which operations should be carried on. In 26 Am. & Eng. Enc. Law, p. 38, is the citation of many cases where a court of equity will not take jurisdiction, and it is stated: "The true rule would seem to be that the situation of the parties and the nature of the contract must be such that the agreement may be executed at least substantially according to the original design. Equity will not undertake to do a vain thing, and a substantial compliance must be practicable as well as possible." In Kansas Con. Co. vs Western R. Co., 135 Mass. 34, 46 Am. Rep. 439, the court was asked to decree specific performance of a contract for the construction of a railroad in Kansas, and to require the delivery of certain bonds and stocks pursuant to the terms of the contract. A demurrer was interposed to the bill on the grounds that the facts stated did not warrant the court in assuming jurisdiction and decreeing the relief demanded. This demurrer was sustained by the lower court, and an appeal duly taken. The Supreme Court affirmed the judgment of the court below, declining to take jurisdiction in the case: "What the construction company agreed to do is to be performed in another state, and direclty concerns the administration of the local affairs of that state. This court cannot protect the railroad company, by any decree which it can render, in the rights which it must have against the construction company, if the latter is to receive this stock. The liabilities which the railroad company is under in regard to the construction of the railway in Kansas, as well as those which the construction company has assumed, must be determined by the local law of that state, as administered by its appropriate tribunals. At every step these

must have the right to determine, as occasions for intervention arise, whether the duty imposed upon the railroad company is being performed, and the laws of the state observed."

We are of the opinion that a court of equity in the Indian Territory should not undertake to operate an oil lease in the territory of Oklahoma, where the agreement is wholly indefinite as to the manner of working and the extent of the operations to be carried on.

After a careful consideration of the questions discussed, and an examination of the authorities, we have arrived at the conclusion that the court below, in sustaining the demurrers, decided correctly, and therefore the judgment is affirmed.

RAYMOND, C. J., and GILL, J., concur.